UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN HESCOTT and BENJAMIN
HESCOTT,                                                Case No.

      Plaintiff,                                        Hon. Thomas L. Ludington

vs.

CITY OF SAGINAW, JOHN STEMPLE, in his
individual capacity, GREGORY BARTON, in
his individual capacity, SCOTT CROWFOOT,
in his individual capacity, and ROHDE BROS.
EXCAVATING, INC.,

      Defendants.
_____/

BERRY REYNOLDS & ROGOWSKI, PC      BRAUN KENDRICK FINKBEINER P.L.C.
By: Susan K. Friedlaender (P41873)      By: Jamie Hecht Nisidis (P48969)
And: Ronald E. Reynolds (P40524)      Attorneys for Defendants
And: Joseph M. Rogowski, II (P51316)      4301 Fashion Square Boulevard
Attorneys for Plaintiffs      Saginaw, Michigan  48603
33493 West 14 Mile Road, Suite 100      989-498-2100
Farmington Hills, Michigan  48331-1587
248-851-3434

## NOTICE OF REMOVAL

To:    United States District Court      Clerk of the Court
      Clerk of the Court      Saginaw County Circuit Court
      P.O. Box 913      111 South Michigan Avenue
      Bay City, MI 48707      Saginaw, MI 48602

      Susan K. Friedlaender
      Attorney for Plaintiff
      33493 West 14 Mile Road, Suite 100
      Farmington Hills, Michigan  48331-1587

NOW COME the Defendants, by and through their Attorneys, Braun Kendrick

Finkbeiner P.L.C., and as grounds for removal state as follows:

{S0850842.DOC.1}

1.      This matter is hereby removed pursuant to 28 U.S.C. §1441(a)

2.      The City of Saginaw, John Stemple, Gregory Barton, Scott Crofoot and Rohde Bros. Excavating, Inc. are Defendants in a civil action brought against them in the Circuit Court for the County of Saginaw, Michigan, which is entitled *John Hescott and Benjamin Hescott v City of Saginaw, et al*, being Case No. 10-9935-CZ-1, which action was filed on or about August 24, 2010. A copy of the Summons and Complaint served upon Defendants is attached hereto.

3.      The Complaint was served upon Defendants on August 24, 2010 and August 25, 2010. In accordance with the requirements of 28 U.S.C. §1446, this Notice of Removal is filed within 30 days after the service of the Complaint on Defendants.

4.      No pleadings other than the Complaint have been filed with the Clerk of the Circuit Court for the County of Saginaw, and no further proceedings have occurred before that Court in said matter.

5.      The Complaint alleges violations of 14th and 4th Amendments to the United States Constitution, as well as violations of the Michigan Constitution and state statutory and common law.

6.      This Court has original jurisdiction over the federal constitutional claims made against Defendants under the provisions of 28 U.S.C. §1331 and Plaintiffs' Complaint may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. §1441(a).

7.      In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims against Defendants pursuant to 28 U.S.C. §1367(a), as such claims are so

related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

WHEREFORE, the Defendants request that the above case now pending against it in the Circuit Court for the County of Saginaw, Michigan, be removed from said Court to the United States District Court for the Eastern District of Michigan, Northern Division.

BRAUN KENDRICK FINKBEINER, P.L.C.

Dated:  September 17, 2010.

By: s/Jamie Hecht Nisidis
    JAMIE HECHT NISIDIS
    Braun Kendrick Finkbeiner P.L.C.
    Attorneys for Defendants
    4301 Fashion Square Boulevard
    Saginaw, Michigan  48603
    989-498-2100
    jamnis@bkf-law.com
    (P48969)

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  n/a

And I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant:  Clerk of the Court, Saginaw County Circuit Court, 111 South Michigan Avenue, Saginaw, Michigan 48602 and Susan K. Friedlaender, Attorney at Law, 33493 West 14 Mile Road, Suite 100, Farmington Hills, Michigan 48331-1587.

s/ Jamie Hecht Nisidis
JAMIE HECHT NISIDIS
Braun Kendrick Finkbeiner P.L.C.
Attorneys for Defendant Accretive Health
4301 Fashion Square Boulevard
Saginaw, Michigan  48603
989-498-2100
jamnis@bkf-law.com
(P48969)

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>10th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>2010-    CZ ~)<br>009935 |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| Courthouse, 111 S. Michigan Avenue, Saginaw, Michigan 48602 | (989) 790-5473 |

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| John Hescott and Benjamin Hescott<br>6460 Bray Road<br>Flint, Michigan 48505<br>(248) 851-3434 | v | City of Saginaw, John Stemple, Gregory Barton, Scott<br>Crowfoot, c/o City Clerk, Diane Herman<br>1315 S. Washington Ave.<br>Saginaw, MI 48601<br>(989) 759-1480 |
| Plaintiff's attorney, bar no., address, and telephone no.<br>Susan K. Friedlaender (P41873)<br>33493 W. 14 Mile Road, Ste. 100<br>Farmington Hills, MI 48331-1587<br>(248) 851-3434 | | |

**SUMMONS**   NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>AUG 2 4 2010 | This summons expires<br>NOV 2 4 2010 | Court clerk<br>*Susan F. Kottenbach* |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action   ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action   ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | RECEIVED Bar no. |
|---|---|---|
| | | AUG 2 4 2010 |

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Saginaw, Michigan | Defendant(s) residence (include city, township, or village)<br>Saginaw, Michigan |
|---|---|
| Place where action arose or business conducted<br>Saginaw, Michigan | LEGAL DEPARTMENT<br>SAGINAW, MICHIGAN |

| 08/23/2010 | *Susan K. Friedlaender* |
|---|---|
| Date | Signature of attorney/plaintiff |

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (3/08)  **SUMMONS AND COMPLAINT**     MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

STATE OF MICHIGAN
SAGINAW COUNTY CIRCUIT COURT

JOHN HESCOTT and BENJAMIN
HESCOTT,

        Plaintiffs,

Case No. 2010-009935 cz~/

v.

CITY OF SAGINAW, JOHN STEMPLE, in his
individual capacity, GREGORY BARTON, in
his individual capacity, SCOTT CROWFOOT,
in his individual capacity, and ROHDE BROS.
EXCAVATING, INC.

        Defendants.

FRED L. BORCHARD P11003

A TRUE COPY
Susan Kaltenbach, Clerk

**BERRY REYNOLDS & ROGOWSKI, PC**
**Susan K. Friedlaender (P41873)**
**Ronald E. Reynolds (P40524)**
**Joseph M. Rogowski, II (P51316)**
33493 W. 14 Mile Road, Suite 100
Farmington Hills, MI 48331-1587
(248) 851-3434
**Attorneys for Plaintiff**

## COMPLAINT

        There is no other Civil Action arising out of the same transaction or occurrence
as alleged in this complaint pending in this Court nor has any such action been
previously filed and dismissed after having been assigned to a judge.

        John Hescott and Benjamin Hescott ("Plaintiffs"), for their Complaint against Defendants

City of Saginaw, and individuals John Stemple, Gregory Barton and Scott Crowfoot allege:

RECEIVED

AUG 2 4 2010

LEGAL DEPARTMENT
SAGINAW, MICHIGAN

## PARTIES, JURISDICTION AND VENUE

1.     The Plaintiff John Hescott ("Hescott") is an individual who resides at 137 Debbie Court in Ozark, Alabama 36360 in the County of Dale.

2.     The Plaintiff Benjamin J. Hescott is an individual who resides at 6460 Bray Road, Flint, Michigan 48505 in the County of Genesee.

3.     The Plaintiffs were the owners of personal property, now destroyed and real property consisting of a house and fixtures, now destroyed. The house was located at 1002 Webber Street in Saginaw, County of Saginaw, Michigan.

4.     The Defendant City of Saginaw ("City") is a Michigan municipal corporation located in Saginaw County, Michigan.

5.     During the time relevant to this Complaint, the Defendant John Stemple ("Stemple") was the Zoning and Development Coordinator for the City of Saginaw.

6.     During the time relevant to this Complaint, the Defendant Scott Crowfoot ("Crowfoot") was the Dangerous Building Inspector for the City of Saginaw.

7.     During the time relevant to this Complaint, the Defendant Gregory Barton ("Barton")was the Fire Marshal for the City of Saginaw.

8.     The Defendant Rohde Brothers Excavating, Inc. ("Rohde"), is a Michigan Corporation. On information and belief, its principal place of business is located at 1240 N. Outer Dr., Saginaw, Michigan 48601, County of Saginaw.

9.     This case concerns constitutional and other claims over which the Court has subject matter jurisdiction.

10.    The amount in controversy exceeds $25,000.00.

2

11.  Venue is proper in this Court because the property which is the subject matter of this Complaint is and was located in Saginaw County. Additionally, the Defendants reside or conduct business in Saginaw County.

## COMMON ALLEGATIONS

12.  The Plaintiffs re-allege paragraphs 1 through 11 as if fully restated in this paragraph.

13.  The Plaintiff John Hescott is a member the United States Armed Forces ("Hescott"). He is a Chief Warrant Officer 4th Class (CW4), helicopter pilot who has flown missions in Afghanistan and Iraq. He formerly lived in the state of Michigan and moved to Ozark, Alabama in March of 2008 to complete a permanent change of station (PCS) move from Fort Drum, NY to the Fort Rucker Aviation base in Ozark, Alabama.

14.  In May of 2001, Hescott and his son Benjamin Hescott purchased a house located on 1002 Webber Street in the City of Saginaw (the "House" or "Property"). The House was a duplex, which the Plaintiffs rented to tenants between the years 2001 and 2007.

15.  After purchasing the Property, the Plaintiffs invested over $40,000.00 in repairs and improvements to the Property. Most recently in 2007, the Plaintiffs replaced the roof on the House. It cost approximately $10,000.00 to replace the roof and install seamless metal gutters for the entire structure.

16.  The House contained fixtures and durable goods such as stoves, refrigerators, clothes dryer, relatively new kitchen cabinets, a water heater, and other fixtures or personal property.

17.  The Plaintiffs listed the Property for sale in March 2008 around the time that Hescott completed his PCS move to Fort Rucker, Alabama.

3

18. The City of Saginaw has contact information for Hescott. The tax assessor has regularly sent tax bills and other assessments to Mr. Hescott's Ozark, Alabama address. Additionally, State law requires that the City keep records of the owners of rental property, which, on information and belief, contain telephone numbers and other contact information. In an inspection report dated December 7, 2007, City Building Inspector James L. Martin noted that he had telephoned Mr. Hescott on his cellular phone to report an emergency situation regarding the Property. Mr. Hescott kept the same cellular phone number when he moved to Alabama.

19. In February 2008, Hescott met with City Building Inspectors Robert Davis and Barrie Woods. Inspector Davis noted in his field report dated February 21, 2008 that Mr. Hescott lived out of town and served in the military.

20. In correspondence dated May 18, 2009, and mailed to Mr. Hescott's residence in Alabama, the City of Saginaw assessed Hescott $79.12 for cutting the lawn. The City had given Mr. Hescott no notice prior to sending the assessment that any lawn maintenance issue existed.

21. Although Hescott moved to Alabama, he generally visited Michigan during his furloughs from active duty. During these visits he would usually inspect the Property.

22. Between May 31, 2009 and June 30, 2009, CW4 Hescott was deployed to Iraq and Afghanistan as part of a team of evaluators from the Directorate of Evaluation & Standards out of Fort Rucker. CW4 Hescott returned to Michigan on or about July 2, 2009.

23. When Hescott returned to the United States from Iraq and Afghanistan in July 2009, he and his wife traveled to Michigan. On or about July 11 or July 12, 2009, Hescott and his wife inspected the Property and were notified by the next door neighbor that the foundation of the House seemed damaged. Hescott asked his next-door neighbor if he had any information regarding the damage. The neighbor said that he first noticed the damage to the foundation wall

4

after the City had mowed the lawn. Mr. Hescott hired the neighbor to mow the lawn from that time forward during his absence.

24.   Mr. Hescott returned to Alabama on or about July 12, 2009.

25.   On or about July 13, 2009, Mr. Hescott called the same contractors who in 2007 had installed the new roof and gutters on the House to inspect the foundation.

26.   On or about July 14 or 15, 2009, the contractors inspected both the interior and the exterior of the House to determine the nature and extent of the damage.

27.   On or about July 16 or 17, 2009, the contractors informed Mr. Hescott that a single section of the foundation needed to be replaced and that they could brace separate and smaller sections of the structure's foundation wall. The contractors estimated the cost of repairs at approximately $5,000.00. Mr. Hescott inquired whether an immediate need existed to erect emergency stanchions or whether the repair work could wait until Mr. Hescott planned to return to Michigan around August 21, 2009. The contractors told Mr. Hescott that, in their opinion, the House was not in any imminent danger of collapse. The contractors, therefore, did not recommend installing the temporary supports. The contractors also advised Mr. Hescott that the repairs could safely wait until August.

28.   Within days after Mr. Hescott discovered the damage to his structure and made arrangements for the repairs, the City completely demolished the House on July 18, 2009, without giving Mr. Hescott or his son any notice or warning.

29.   On information and belief, sometime between the date of Mr. Hescott's visit to the Property on or about July 11 or 12, 2009, and before the alleged demolition date of July 18, 2009, city officials warned Mr. Hescott's neighbor of the impending demolition.

5

30.   The Defendant Barton, who is a City Fire Marshall, prepared an incident report allegedly dated July 18, 2009, in which he cursorily described his decision, made in concert with Defendant Scott Crowfoot, to demolish the House.

31.   The Defendants Barton, Crowfoot or some other person contacted Defendant Rohde Brothers Excavating, Inc. ("Rohde"), who demolished the House and destroyed its contents allegedly on July 18, 2009.

32.   The City also contacted utility companies to turn off gas and electricity connections to the House.

33.   On or about, July 20, 2009, the Defendant Rohde, without the Plaintiffs' knowledge or consent, dumped remnants of the House, and possibly the fixtures and other household goods, in the Brent Run landfill.

34.   On information and belief, Rhode returned to the Property at some date subsequent to the demolition of the House, without the Plaintiffs' knowledge or consent, to remove the basement foundation and grade the land.

35.   The City failed to give the Plaintiffs any prior notice of the City's intent to demolish the House and dispose of or destroy the contents of the House.

36.   Subsequent to the demolition, the City still failed to notify the Plaintiffs that the City had demolished the House. The City also failed to notify the Plaintiffs that the City had destroyed or taken possession of the household goods.

37.   The City never gave the Plaintiffs notice or secured their consent to dump the contents of the House at the landfill. The City never gave the Plaintiffs notice of, or secured their consent, to access the premises for the purpose of removing the foundation and grading the land.

6

38.   On or about August 21, 2009, Hescott travelled from Alabama to Michigan to meet with the contractors who he had hired to make the needed house repairs. On that same date, Mr. Hescott and the contractors purchased the necessary construction materials to repair the House and then drove together to Saginaw to make the repairs.

39.   When Mr. Hescott and the contractors arrived at the Property on approximately August 21, 2009, they discovered that the House been completely demolished and the land graded.

40.   Mr. Hescott felt a shocking sense of horror, outrage, humiliation, indignation, and mortification upon discovering that the House and its contents were gone. Hescott has continued to suffer mental and emotional distress as a direct result of the Defendants' willful and wanton destruction of his Property and deliberate violation of his civil rights. The distress has been especially severe and poignant given that he has risked his life to protect the very rights embodies in the United States Constitution of which he was deprived. Mr. Hescott has risked his life to keep our freedoms intact and was indescribably devastated that government actors would treat him with such contempt and deprive him of the core civil rights designed to guaranty liberty and protect individuals from governmental abuse.

41.   Even after demolishing the House and destroying its contents, the City never notified Mr. Hescott of its actions, but had the audacity to send the Plaintiffs a property tax bill. Mr. Hescott paid the bill under protest to protect his credit rating. The City continues to send Mr. Hescott tax assessment bills for the Property that the City has now rendered worthless.

7

**COUNT I - VIOLATION OF DUE PROCESS UNDER THE 14TH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE 1 SECTION 10 OF THE MICHIGAN CONSTITUTION.**

42. The Plaintiffs re-allege paragraphs 1 through 41 as if fully restated in this paragraph.

43. The 14th Amendment to the U.S. Constitution provides in relevant part "nor shall any State deprive any person of life, liberty, or property, without due process of law." Article 1, § 17 of the Michigan Constitution similarly provides that "no person ... shall be deprived of life, liberty, or property, without due process of law."

44. At a bare minimum, the due process clause requires that the government provide a person with notice and a meaningful opportunity for a hearing before depriving a person of protected property rights.

45. 42 USC § 1983 imposes liability on "[e]very person who, under color of any statue, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws...." A municipality is a "person" which may be held liable in an action for damages by a person whose civil rights the municipality has violated through the implementation or execution of a municipal ordinance or policy. Individuals acting in concert with the government can also have liability under § 1983.

46. The Plaintiffs had a constitutionally protected property right in their House, fixtures, real and personal property.

47. The City and the individual Defendants, acting under the color of the City's ordinances and legislative policy contained in those ordinances, deprived the Plaintiffs of their property rights without due process of law.

8

48.   Section 151.120 of the City's Dangerous Buildings Ordinance ("Ordinance") authorizes City officials to order the immediate repair or demolition of an allegedly dangerous building. The Ordinance authorizes the demolition without requiring that the official make any effort to contact the property owner before demolishing the property and without first considering whether less drastic measures exist to stabilize the situation pending notification of the property owner.

49.   According to Incident Report 2009-0000899-000, Fire Marshal Barton and Dangerous Building Inspector Crowfoot, acting under the Ordinance and pursuant to City policy, made the decision to order the demolition of the House at 1002 Webber Street. Barton, Crowfoot and other unknown City officials were implementing City policy and the Ordinance when they ordered the demolition of the House without giving the Plaintiffs any notice or a hearing and without resorting to less drastic measures than immediate demolition.

50.   On information and belief, the City and individual Defendants, consistent with City policy and the Ordinance, made no effort to contact either Plaintiff before ordering the demolition, although the City had the time and opportunity to contact the Plaintiffs before destroying their Property.

51.   When the contractor inspected of the House approximately one day before the demolition, no emergency or other exigent circumstances existed that would have prevented the City from making a reasonable attempt to notify the Plaintiffs. If the City had taken the modest amount of time required to at least telephone either of the Plaintiffs while waiting for the utility companies and Rohde to arrive at the scene, no person or property would have been in danger of imminent injury during the time required to provide such minimal notice.

52.   Established state law precedent required the City to explore the option for and take less drastic measures than the immediate demolition of the Property.

53.   Even if any emergency existed, which it did not, the Plaintiffs were still entitled to post-deprivation process, which, consistent with its policy and Ordinance, the City also failed to provide.

54.   Subsequent to the demolition, the City and the individual Defendants acting in concert with the City, further violated the Plaintiffs' due process rights by accessing the Property, disposing of the Plaintiffs' fixtures and personal property and making changes to the land, without notice and consent.

55.   The City has never accounted for the goods and personal property that it destroyed or whether anything of salvage value remained after the demolition of the House.

56.   The Plaintiffs have suffered damages as a result of the City and Individual Defendants' violation of their procedural due process rights. The Plaintiffs have been damaged by way of example and not limitation through:

a.   The loss of the House, fixtures and other goods that were in the House when the City destroyed the Plaintiffs' Property;

b.   The loss of any value to the remainder of the Property;

c.   The emotional and mental distress that Mr. Hescott suffered upon discovering the damage weeks after the City ordered the demolition;

d.   The wasted expense and time to travel to Michigan and the purchase of construction materials to make the repairs; and

e.   Other losses caused by the City's violation of the Plaintiffs' due process rights.

10

57.   The Plaintiffs have no adequate post-deprivation remedy under state law because The Supreme Court of Michigan has disavowed the trespass/nuisance exception to governmental immunity and the Michigan Supreme Court has held that there is no monetary remedy for violations of due process under the Michigan Constitution.

## COUNT II – VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER ARTICLE 1, §10 OF THE STATE AND THE 14th AMENDMENT TO THE FEDERAL CONSTITUTION

58.   The Plaintiffs re-allege paragraphs 1 through 57 as if fully restated in this paragraph.

59.   The substantive component of the due process clause of the State and Federal constitutions protect against the arbitrary and unreasonable deprivation of property rights, regardless of the procedures used to effectuate the deprivation.

60.   The City's Dangerous Building Ordinance mostly tracks the state's enabling legislation for the regulation of allegedly dangerous buildings under MCL §125.539 of the Housing Law of Michigan, MCL 125.401, *et seq.*  The Housing Law, however, has no provision for the demolition of a building without notice or hearing or without first determining whether the building can be repaired or temporarily stabilized to delay the destruction of a building.

61.   The substantive component of the due process clause, in relevant part, limits the City's power to enact ordinances that interfere with or destroy protected property rights.

62.   Section 151.120 of the Saginaw Housing Code violates the substantive component of the due process clause, by way of illustration and not limitation, because the Ordinance:

a.     Fails to articulate clear and workable standards to guide the discretion of the officials charged with its implementation;

11

b.      Fails to accord even the most minimal due process protection such as requiring that officials attempt to notify property owners by telephone or other immediate means before destroying the Property;

c.      Fails to require that the decision makers make a good faith and informed effort to take less drastic measures than destroying property without notice and a hearing;

d.      Fails to provide for any post deprivation notice or hearing in the event that a true emergency requires immediate demolition with no time to alert the owner of the imminent destruction; and

e.      Fails to require that the City account for any personal goods or property destroyed or taken coincident with an alleged emergency demolition.

63.     The City and individual Defendants were implementing city policy and acting under the color of the Ordinance when the City destroyed the Plaintiffs' Property. The application of the City's Ordinance to the Plaintiffs has deprived the Plaintiffs of their Property without substantive due process and has caused the Plaintiffs to suffer damages directly related to the violation of their civil rights.

## COUNT III - VIOLATION OF THE 4TH AMENDMENT

64.     The Plaintiffs re-allege paragraphs 1 through 63 as if fully restated in this paragraph.

65.     The 4th Amendment to the U.S. Constitution is applicable to the states through the 14th Amendment to the U.S. Constitution.

66.     The 4th Amendment in relevant part protects citizens against unreasonable searches and seizures of "houses, papers, and effects...".

12

67. A seizure under the 4th Amendment means an interference with a citizen's possessory interests in its house, papers and effects.

68. The City and individual Defendants unreasonably interfered with the Plaintiffs' possessory interests in its House, fixtures and personal effects. The City was acting under the color of its Ordinance and the legislative policy as expressed in the Ordinance when it seized the Plaintiffs' Property.

69. No exigent circumstances existed to justify the unreasonable seizure of the Plaintiffs' Property.

70. The City and individual Defendants had no reasonable basis to believe that the House was in imminent danger of collapsing, and even if it did collapse, that the collapse of the House was likely to cause injury. The City could have installed temporary supports to prevent the House from collapsing or used simple means to protect the immediate area from any falling debris had there been a collapse. On information and belief, the City planned the seizure days in advance of the actual demolition.

71. The City and the individual Defendants working in concert with the City had no lawful right to enter the Property and carry away any of the Plaintiffs' remaining fixtures, personal property and effects days after demolishing the House without the Plaintiffs' knowledge or consent.

72. The City and individual Defendants acting in concert with the City also had no lawful right to enter the Plaintiffs' Property after demolishing and destroying the Plaintiffs' Property to make any changes to the land without getting the Plaintiffs' prior consent for the entry.

13

73.    The Plaintiffs have suffered damages, including personal injury and property damage as a direct result of the City and individual Defendants' violation of their 4th Amendment rights.

## COUNT IV - VIOLATION OF ARTICLE 10, SECTION 2
## OF THE MICHIGAN CONSTITUTION

74.    The Plaintiffs re-allege paragraphs 1 through 73 as if fully restated in this paragraph.

75.    Article 10, §2 of the Michigan Constitution forbids the government from taking property for a public purpose without the payment of just compensation. When the government condemns property allegedly to eradicate blight, the government has the burden to prove by clear and convincing evidence that the condemnation is for a public purpose.

76.    The City has procedures for condemning property that the City claims are blighted or dangerous, which it failed to utilize when it took the Plaintiffs' Property.

77.    The City physically invaded and took the Plaintiffs' Property without the payment of just compensation when it destroyed the House allegedly to protect the public.

78.    The City also has destroyed the value and utility of the entire parcel of land by destroying the House, which could have been repaired as intended and either sold or leased. The Plaintiffs' land has no value without the House.

79.    The City failed to commence any condemnation proceedings for the taking of the Property for the public's benefit, requiring the Plaintiffs to file an action for inverse condemnation. The City should be required to commence proceedings under the Uniform Condemnation Procedures Act, MCL 213.51, *et seq.,* to take the Property.

80.    The City owes the Plaintiffs just compensation for the taking of their property rights for an alleged public purpose.

## COUNT V - UNLAWFUL DESTRUCTION OR
## CONVERSION OF GOODS UNDER MCL 600.2920 AND THE COMMON LAW

81. The Plaintiffs re-allege paragraphs 1 through 80 as if fully restated in this paragraph.

82. The Plaintiffs owned fixtures, improvements and other personal property that the City and the individual Defendants destroyed or converted when they demolished the House.

83. The fixtures, improvements and personal property included, but were not limited to, a hot water heater, stove, refrigerator, carpeting, furniture, kitchen cabinets and other salvageable materials.

84. The City has never accounted for the fixtures, items of personal property and other salvageable materials that it unlawfully possessed and destroyed.

85. The City and Defendant Rohde has never accounted for the goods, property and materials that it took from the Property after the demolition.

86. The City and individual Defendants wrongfully exerted dominion and control over the Plaintiffs' fixtures, personal property and salvageable goods inconsistent with the Plaintiffs' possessory and other property rights.

87. The City and individual Defendants are liable to the Plaintiffs for the intentional destruction and conversion of their property.

88. The City and the individual Defendants caused the Plaintiffs to suffer damages including mental and emotional distress based upon their unlawful actions.

89. The City and individual Defendants are liable to the Plaintiffs under common law and statutory conversion.

15

90. Conversion is an intentional tort and the relevant government actors have no governmental immunity for the commission of the intentional tort of conversion.

## COUNT VI - TRESPASS ON LAND UNDER MCL 600.2919 AND THE COMMON LAW

91. The Plaintiffs re-allege paragraphs 1 through 90 as if fully restated in this paragraph.

92. The Plaintiffs had the exclusive right to possession of their Property.

93. The City and individual Defendants invaded the Plaintiffs' right of exclusive possession by the unauthorized occupation of the Plaintiffs' Property on at least two occasions.

94. On information and belief, some or all of the Defendants may have removed or damaged trees, soil, plants or other natural resources from the Property.

95. The trespass on the Plaintiffs' land was an intentional and voluntary act.

96. The Plaintiffs have been damaged by the Defendants' trespass on their land.

97. Trespass is an intentional tort and the governmental actors have no immunity for the commission of an intentional tort.

## COUNT VII -- EXEMPLARY DAMAGES UNDER STATE LAW

98. The Plaintiffs reallege paragraphs 1 through 97 as if fully restated in this paragraph.

99. The City and individual Defendants deliberately, willfully and wantonly destroyed the Plaintiffs' Property with a callous disregard for the Plaintiffs' protected property and other civil rights.

100. The City and individual Defendants made no effort to contact the Plaintiffs either before demolishing their Property or after committing the deed.

101. The City continued to authorize Defendant Rohde to illegally access and trespass on the Plaintiffs' Property without getting the Plaintiffs' consent after razing the House.

16

102. The City's deliberate failure to notify the Plaintiffs of the demolition, even after the fact, caused Mr. Hescott to make the shocking and disturbing discovery one month after the demolition.

103. The City's callous and willful disregard of Mr. Hescott's rights caused Mr. Hescott to waste precious time and money to make the trip from Alabama to Saginaw to repair the House. The City easily could have avoided the further humiliation and injury that Mr. Hescott suffered by immediately notifying Mr. Hescott that the City had razed the House.

104. The City's course of conduct toward the Plaintiffs has been shocking, abusive and inexcusable.

105. Mr. Hescott has suffered mental and emotional stress and distress including, but not limited to, humiliation, outrage and mortification over the events that led to this lawsuit.

106. On information and belief, the City deliberately withheld notice of its conduct and acted rashly to demolish the House to conceal that it had caused the damage to the foundation when it mowed the lawn. Even if the City did not withhold notice for these reasons, its conduct still requires the imposition of exemplary damages.

## REQUEST FOR RELIEF

The Plaintiffs, therefore, request that the Court:

    a. Enter a judgment in their favor under all the Counts of their Complaint;

    b. Award the Plaintiffs compensatory and punitive damages under 42 USC §1983 based on the Defendants' violation of their constitutional rights under the 4th and 14th Amendments to the U.S. Constitution;

17

c.  Award the Plaintiffs compensatory and exemplary damages under state law

for Defendants' intentional torts committed against the Plaintiffs including

treble damages under MCL 600.2919(1)(C).

d.  Require the City to institute condemnation procedures under MCL 213.53 and

order the City to pay the Plaintiffs just compensation for the taking of their

Property;

e.  Award the Plaintiffs their costs, expert witness and attorney fees incurred to

vindicate their rights in this matter; and

f.  Grant such other relief that is fair and proper under the facts and law of this

case.

Respectfully submitted,

**BERRY REYNOLDS & ROGOWSKI, PC**

By: _Susan K. Friedlaender_

**Susan K. Friedlaender (P41873)**
33493 W. 14 Mile Road, Suite 100
Farmington Hills, MI  48331-1587
(248) 851-3434
**Attorneys for Plaintiff**

Dated: August 19, 2010

STATE OF MICHIGAN
SAGINAW COUNTY CIRCUIT COURT

JOHN HESCOTT and BENJAMIN
HESCOTT,

       Plaintiffs,

v.

CITY OF SAGINAW, JOHN STEMPLE, in his
individual capacity, GREGORY BARTON, in
his individual capacity, SCOTT CROWFOOT,
in his individual capacity, and ROHDE BROS.
EXCAVATING, INC.

       Defendants.

Case No. 2010 -00993 5 CZ -1

FRED L. BORCHARD P11003

**BERRY REYNOLDS & ROGOWSKI, PC**
**Susan K. Friedlaender (P41873)**
**Ronald E. Reynolds (P40524)**
**Joseph M. Rogowski, II (P51316)**
33493 W. 14 Mile Road, Suite 100
Farmington Hills, MI 48331-1587
(248) 851-3434
**Attorneys for Plaintiff**

A TRUE COPY
Susan Kaltenbach, Clerk

## JURY DEMAND

Plaintiff John Hescott and Benjamin Hescott, through their counsel, hereby request a trial

by jury of all issues so triable in the above action.

       Respectfully submitted,

       **BERRY REYNOLDS & ROGOWSKI, PC**

       By: _____
          Susan K. Friedlaender (P41873)
          33493 W. 14 Mile Road, Suite 100
          Farmington Hills, MI 48331-1587
          (248) 851-3434
Dated: August 23, 2010       **Attorneys for Plaintiff**