UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN HESCOTT, et al.,

        Plaintiffs,                                  Case No. 10-13713
                                                       Honorable Thomas L. Ludington

v.

CITY OF SAGINAW, et al.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART, DENYING IN PART
DEFENDANTS' MOTION IN LIMINE**

Defendants' motion *in limine* seeks to limit the introduction of certain evidence during the upcoming trial scheduled to commence November 6, 2012. For the following reasons, the motion is granted in part and denied in part.

**I**

Plaintiffs in this case, John and Benjamin Hescott, owned a house in Saginaw, Michigan, located at 1002 Webber Street. On July 18, 2009, the house was reported to Defendant City of Saginaw as a public risk due to its dilapidated condition. Neither Plaintiff was living in the house at the time. Defendants Scott Crofoot and Greg Barton, both Saginaw employees, inspected the house and determined it was dangerous. The house was then demolished by Defendant Rohde Brothers Excavating, Inc. The demolished house and contents were carried away to a nearby landfill two days later.

Plaintiffs claim the house was salvageable, and filed a complaint against Defendants, which include Mr. Crofoot, Mr. Barton, Rohde, and the City of Saginaw, along with the City's Chief Inspector, John Stemple. Defendants then filed a motion for summary judgment, which was granted in part and denied in part. Five of Plaintiffs' claims, and part of a sixth, were

dismissed with prejudice.  The upcoming trial will address Plaintiffs' remaining claims.  First, Plaintiffs' inverse condemnation claim against Defendant City of Saginaw, including Plaintiffs' assertion that the City's Dangerous Buildings Ordinance, as applied, was violated because there was in fact no " . . . immediate and serious danger to the public safety or health . . ."  § 151.120.  Second, Plaintiffs' Fourth Amendment claim against all Defendants for the carrying away of the remaining fixtures, personal property, and effects after the demolition.

To succeed on their inverse condemnation claim, Plaintiffs must prove that "the government's actions were a *substantial* cause of the decline of his property's value and also establish the government abused its legitimate powers in affirmative actions aimed directly at the plaintiff's property."  *Hinojosa v. Department of Natural Resources*, 263 Mich. App. 537, 548 (2004) (emphasis in original) (internal quotation marks omitted).  To establish such an abuse of power here, Plaintiffs must show there was no emergency condition necessitating the demolition of their Saginaw house.

The Fourth Amendment claim involves the warrantless seizure of the remains of Plaintiffs' demolished home.  Plaintiffs must show that Defendants' interference with their property, the housing-debris after the demolition, was unreasonable.  *Soldal v. Cook County*, 506 U.S. 56, 71 (1992).  The "critical inquiry is whether reasonable expectations of privacy exist" in the demolished house-debris, "and if so, whether exigencies justify [Defendants'] reentries" to carry it away.  *Clifford v. Michigan*, 464 U.S. 287, 293 n.3 (1984).

Before Defendants' motion for summary judgment was addressed, Defendants filed a motion *in limine* on April 16, 2012.  Defs.' Mot., ECF No. 25.  The motion outlines Defendants' belief that the following evidence should be excluded from trial:  (1) evidence of the cost to replace Plaintiffs' house; (2) evidence of the cost of improvements made to the house before

demolition; (3) evidence that a neighbor inquired about buying or renting the property before demolition; (4) any argument, evidence, or theories that Defendant Saginaw had knowledge of the condition of the house before July 18, 2009; (5) evidence regarding the location, number, and funding sources of non-emergency demolitions conducted by Defendant Saginaw; and (6) evidence regarding Plaintiff John Hescott's military service.

As previously established, Defendants' motion *in limine* was filed before summary judgment disposed of the majority of Plaintiffs' claims. As such, the substance of Defendants' motion seeking to exclude evidence that is irrelevant to Plaintiffs' remaining claims will be granted. Some of the evidence Defendants wish to exclude could be relevant to Plaintiff's remaining claims, and will be discussed more thoroughly below.

## II

Under the Federal Rules of Evidence, relevant evidence is admissible unless the United States Constitution, a federal statute, the Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402. Irrelevant evidence is not admissible. *Id*. Evidence is "relevant" if it tends to make a material fact more or less probable. Fed. R. Evid. 401. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

## III

### A

Defendants first move to exclude evidence of the "replacement cost new" of Plaintiffs' house. Plaintiffs' expert, Norman G. Thomas, submitted a report detailing three approaches to

setting the value of Plaintiffs' house before demolition: the cost approach, the income approach, and the market approach.  Defs.' Mot. Ex. B.

Under the cost approach, Mr. Thomas established the "Estimated Cost 'New' for subject property as of the date of valuation or July 18, 2009."  *Id*. at 23.  Mr. Thomas calculated the cost of reproducing Plaintiffs' house, as new, along with any existing improvements.  This cost was estimated as $118,938.  *Id*.

Under the income approach, Mr. Thomas reviewed three properties that were similar to Plaintiffs' house, used as rental properties, and then sold.  *Id*. at 24.  Mr. Thomas utilized the charged monthly rent for each property, and its sale price, to determine two figures: the estimated monthly rent for Plaintiffs' house, and the Gross Rent Multiplier (GRM).  *Id*. at 25.  GRM is calculated by dividing the sale price by the monthly rent for each property.  The first comparison property rented for $900 per month, sold for $34,500, and therefore had a GRM of 38.33.  *Id*. at 24.  The second rented for $900 per month, sold for $35,000, and had a GRM of 38.9.  *Id*.  The final property rented for $900 per month, sold for $48,000, and had a corresponding GRM of 53.33.  *Id*.  Using the similarities between the properties, Mr. Thomas then estimated the rental value of Plaintiffs' house at $850 per month.  *Id*. at 25.  He calculated the GRM to be approximately 40.  *Id*.  Mr. Thomas then multiplied those two numbers to estimate the sales price of Plaintiffs' house as an investment property at the time it was demolished.  This amounted to $34,000.  *Id*.

Next, Mr. Thomas detailed the market approach.  This approach, like the income approach, involves comparing Plaintiffs' house to similar properties in the market.  *Id*. at 26.  Mr. Thomas detailed four properties that were recently sold, each comparable to Plaintiffs' house.  *Id*. at 28–30.  Then, based on the sale prices of those properties, Mr. Thomas estimated

the value of Plaintiffs' house.  He concluded, under the market approach, Plaintiffs' house was worth $35,000.  *Id*. at 30.

Finally, Mr. Thomas compared the income and market approaches to reach the "total estimated market value" of Plaintiffs' house, which he calculated to be $35,000.  *Id*. at 31.  The "replacement cost new" value, as previously discussed, he then set as $119,000.

Defendants have moved to exclude the latter value from the jury's consideration. Plaintiffs argue the "replacement cost new" is relevant as "[t]he only way to restore any economic value to the vacant land is by constructing a new house."  Pls.' Resp. 5.

As previously discussed, only two of Plaintiffs' claims remain.  The value of Plaintiffs' house could only be relevant for the determination of "just compensation" after a government taking.  Accordingly, the "replacement cost new" of Plaintiffs' house is only admissible if it is relevant to determining "just compensation."  This is not the case.

In Michigan, the law is settled that "the measure of damages to real property, if permanently irreparable, is the difference between the market value before and after the damage."  *Bayley Products, Inc. v. American Plastic Products Co.*, 30 Mich. App. 590, 598 (1971).  Because Plaintiffs' house was demolished entirely, this is just the sort of "permanently irreparable" damage that calls for the market value to determine "just compensation."  *See Strzelecki v. Blaser's Lakeside Indus. of Rice Lake, Inc.*, 133 Mich. App. 191, 194 (1984) (Where home destroyed by fire was "permanently and irreparably injured" as "the property had no value after the fire. . . . the measure of damages [was] the market value of the real and personal property at the time the fire occurred.").  Plaintiffs' property without the house similarly had almost no value: only $350.

The purpose of "just compensation" is to put the property owner in as good a position as it would have been in had its property not been taken. *Miller Bros. v. Dep't of Natural Resources*, 203 Mich. App. 674, 685 (1994) (citing *State Hwy. Comm'r v. Eilender*, 362 Mich. 697, 699 (1961)). The public must not be enriched at the property owner's expense, nor should the property owner be enriched at the public's expense. *Miller Bros.*, 203 Mich. App. At 685. "If replacement cost without depreciation was allowed, the plaintiff would recover an amount as if the property were new at the time it was destroyed." *Strzelecki*, 133 Mich. App. at 194-95.

The "replacement cost new" is not the appropriate remedy to establish just compensation. As discussed at length, the difference between the market value before and after the demolition addresses the demolition that left Plaintiffs' house "permanently and irreparably injured." *Strzelecki*, 133 Mich. App. at 194. The "replacement cost new" value discussed in Mr. Thomas' report is therefore not relevant to the issues in this case, and is not admissible. Fed. R. Evid. 402. Defendants' motion on this ground will be granted, and any evidence of the "replacement cost new" of Plaintiffs' property, 1002 Webber Street, Saginaw, Michigan, will be excluded.

**B**

Defendants next move to exclude evidence of the cost of improvements made to Plaintiffs' house during their ownership. As previously discussed, these costs are not relevant for the jury's determination of the value of Plaintiffs' house. The fair market value of the residence at the time of the demolition, including those improvements, has already been established through Mr. Thomas' report. That is, the report indicates Mr. Thomas took any improvements into consideration: "Through information provided by the property owner, we have identified updates including newer furnace, plumbing and electrical repair as well as interior drywall and painting." Defs.' Mot. Ex. B, at 9. He went on to establish, "We have

applied the extraordinary assumption the interior condition of the dwelling is average and typical for the market as of the effective date of this report."  *Id*. at 10.  Because Mr. Thomas already considered any improvements made by Plaintiffs, as well as indicating the uncertainty of such an assumption, there is no need to present the cost of these improvements to the jury a second time. The cost of any improvements to Plaintiffs' house will also be excluded.

Plaintiffs may, however, present testimony and evidence as to what repairs were made, when those repairs occurred, and any materials that were installed in the house.  This evidence is relevant for the limited purpose of rebutting Defendants' assertion that the property was subject to neglect; and to identify any materials that were carried away after the demolition.

## C

Defendants also oppose the admission of any evidence concerning whether the Tappens, Plaintiffs' neighbors, inquired about buying or renting Plaintiff's house prior to the demolition. This evidence has no relevance to the issues of the case.  John Hescott referred to any discussions with the Tappens as simply an "idea," and testified that he responded "maybe we'll see if you're serious about it or whether you're just thinking about it or whatever."  Hescott Dep. 69.  Such an indeterminate conversation is not a solidified offer to purchase or rent the house, and has no bearing on its market value.  The evidence also is not relevant to the jury's determination of whether Plaintiffs' rights were violated when materials were carried away after the demolition.  The evidence will be excluded, and Defendants' motion on this issue will be granted.

## D

Defendants next oppose any argument, alleged evidence, or theories that Defendant Saginaw had knowledge of the house's poor condition before July 18, 2009, and any evidence

the damage was caused when Defendant Saginaw tended the lawn.  Defendants' motion on this point will not be granted.

As indicated, Plaintiffs' inverse condemnation claim against Defendants remains.  To prove the claim, Plaintiffs must demonstrate that Defendants abused their powers when they demolished the house.  Whether a legitimate emergency condition existed at the time of the demolition is relevant to this issue.  Defendants' knowledge of the house's condition before July 18, 2009 would certainly make such an emergency situation more or less probable.  Therefore, this evidence will not be precluded before trial.

**E**

Defendants move to exclude evidence regarding the location, number, and funding sources of non-emergency demolitions, and any of the related audits, conducted by Defendant Saginaw.  As before, this evidence is not relevant to the issues that remain in the case.  It will also be excluded, and Defendants' motion on this issue will be granted.

**F**

Finally, Defendants move to exclude any evidence regarding John Hescott's military service.  Defendants claim this evidence will be offered in violation of Federal Rule of Evidence 404(a), and that it is not relevant under Rule 402.  Defendants retreat to the position that even if the evidence is marginally relevant, the probative value is substantially outweighed by the danger of unfair prejudice, and it should be excluded under Rule 403.

Federal Rule of Evidence 404(a) prohibits the use of a person's character or character trait "to prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  Here, Plaintiffs would not offer John Hescott's military service to show that he was brave, patriotic, or loyal as Defendants suggest.  Even if they did, the

evidence would not be offered to show that he acted in accordance with those character traits on any occasion in violation of Rule 404(a).   As Plaintiffs contend, evidence concerning John Hescott's military service does not "run afoul" of Rule 404(a) in this case.  Pls.' Resp. 13.

In addition, the evidence is relevant.  Plaintiffs expect Defendants' witnesses to testify "regarding the proliferation of abandoned buildings in the City and the problem with out of town landowners who allegedly neglect their property."  *Id*.  John Hescott's military service was the reason he was unable to "oversee the property on a daily or weekly basis."  *Id*.  Like the information regarding the number of improvements made to Plaintiffs' house, this information is important for the jury to assess whether Plaintiffs neglected the property, which led to its demolition in the first place.  Any danger of unfair prejudice from Hescott's military service does not "substantially outweigh" its probative value in this case.  Therefore, Defendants' motion on this ground will be denied.  However, Plaintiffs will be limited to the extent necessary to explain John Hescott's schedule so as not to conflate the facts with a sense of patriotism.

## IV

Accordingly, it is **ORDERED** that Defendants' motion *in limine*, ECF No. 25, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that any evidence concerning the "replacement cost new" of Plaintiffs' house at 1002 Webber Street, Saginaw, Michigan is **EXCLUDED**.

It is further **ORDERED** that any evidence concerning the cost of improvements to Plaintiffs' house is **EXCLUDED**.

It is further **ORDERED** that any evidence concerning the Tappens' inquiry about buying or renting Plaintiffs' house is **EXCLUDED**.

It is further **ORDERED** that any argument, evidence, or theory that Defendant City of Saginaw had knowledge of the foundation collapse before July 18, 2009, or caused that collapse, is **NOT EXCLUDED**.

It is further **ORDERED** that any evidence regarding the location, number, and funding sources of non-emergency demolitions conducted by Defendant City of Saginaw is **EXCLUDED**.

It is further **ORDERED** that evidence of John Hescott's military career is **NOT EXCLUDED**.


Dated: October 17, 2012                                    s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

<table>
<tr><td>

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 17, 2012.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS

</td></tr>
</table>