UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN HESCOTT, et al.,

       Plaintiffs,                            Case No. 10-13713
                                                       Honorable Thomas L. Ludington

v.

CITY OF SAGINAW, et al.,

       Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants seek judgment as a matter of law. A trial was conducted to address Plaintiffs John and Benjamin Hescott's complaint about Defendants' 2009 demolition of their residential property, along with the removal of the resulting debris to a landfill. The jury concluded the demolition was lawful but there was no emergency requiring the removal of the debris without first notifying Plaintiffs or acquiring a court order. Plaintiffs were awarded $5,000.

During the trial, at the close of Plaintiffs' case, Defendants moved for judgment as a matter of law. Defendants argued that no reasonable jury could conclude that emergency circumstances did not exist requiring that the debris be removed, and that the individual Defendants were entitled to qualified immunity on the issue regardless. The Court took the motion under advisement and submitted the issue to the jury. After the jury's verdict was returned, Defendants renewed their motion pursuant to Federal Rule of Civil Procedure 50(b). Defendants' motion will be granted in part and denied in part.

**I**

In 2001 Plaintiffs purchased a house in Saginaw, Michigan. The house was in poor condition, and as of 2009 neither Plaintiff physically lived there. For a while John was able to rent the house out to tenants, but that did not last. He attempted to sell the house in 2008 but was ultimately unsuccessful. Throughout this time, John was forced to make frequent repairs in order to keep the house up to code.

On July 18, 2009, a police officer was called to the area and he noticed that a large part of the house's foundation had given way. The officer contacted Defendant City of Saginaw's "code enforcement" unit and reported the situation. Plaintiffs' house was then inspected by Defendants Scott Crofoot and Greg Barton, who both work for the City. They determined that the house was dangerous due to its dilapidated condition, and because it appeared abandoned, concluded it should be demolished. The house was destroyed that afternoon by Defendant Rohde Brothers Excavating, Inc. Rohde Brothers reentered the property and removed the demolished house and its contents to a landfill two days later.[1]

Plaintiffs filed this action against Defendants on August 19, 2010, alleging both federal and state law claims arising from the demolition of the residence. More specifically, Plaintiffs' complaint spanned 18 pages and included 7 causes of action. Plaintiffs believed they were entitled to recover the fair market value of the home which their appraiser, Mr. Mornam G. Thomas, concluded was around $35,000. Defendants' appraiser concluded that the fair market value was substantially less than $35,000. The parties were ultimately unsuccessful in their attempts to settle the claims, and trial commenced on November 6, 2012.

Over four days the jury considered the two claims that went to trial: Plaintiffs' claim against Defendant City of Saginaw for inverse condemnation; and Plaintiffs' claim against the

---

[1] The demolition occurred on a Saturday and the local landfill was not open until Monday morning.

City and individual Defendants John Stemple, Scott Crofoot, and Gregory Barton for the carrying away of any fixtures, personal property, and effects after the house was demolished. The jury reached a unanimous verdict of no cause of action relating to Plaintiffs' claim for inverse condemnation, concluding that there were emergency circumstances that justified the demolition of the residence. The jury found, however, that no emergency existed to justify reentry of Plaintiffs' property to seize the debris without notifying Plaintiffs or obtaining a court order. The jury awarded Plaintiffs $5,000 for the market value of the debris.

At the close of Plaintiffs' case, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Court requested that Defendants briefly outline their motion, but did not rule from the bench given the trial schedule. Instead, the case was submitted to the jury. After the jury awarded damages on Plaintiffs' Fourth Amendment claim, Defendants renewed their motion pursuant to Federal Rule of Civil Procedure 50(b).

Defendants assert in their renewed motion for judgment as a matter of law that based on the evidence proffered at trial, which they claim was not refuted, no reasonable jury could have found for Plaintiffs on their Fourth Amendment claim. Defendants first claim that no reasonable jury could have concluded that emergency circumstances did not exist on July 20, 2009 when the debris was removed. Second, Defendants argue that no reasonable jury could have concluded the individual Defendants were not entitled to qualified immunity on the issue.

**II**

Federal Rule of Civil Procedure 50(a) allows a party to move for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). Review of a Rule 50(a) motion is governed by the same standard as motions for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). This Court must "direct a verdict if, under

the governing law, there can be but one reasonable conclusion as to the verdict" or if there is insufficient evidence to create a genuine issue of fact for resolution by a jury. *Id*. (citing *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80 (1943)). Stated otherwise, if "a reasonable trier of fact could draw only one conclusion" when viewing the evidence in the light most favorable to the non-moving party, judgment should be granted for the moving party. *American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 157 (6th Cir. 1997); *see also Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006).

Rule 50(b) provides that if a court does not grant a motion for judgment as a matter of law during trial, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(b). In ruling on a renewed motion, a court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id*.

### III

Defendants, not surprisingly, do not contest the jury's determination that the demolition of the residence was justified. They do contest, however, the jury's other conclusion: that Rohde Brothers' later reentry onto Plaintiffs' property to remove Plaintiffs' debris was unlawful.

### A

In the Court's August 7, 2012 Opinion & Order addressing Defendants' motion for summary judgment, the Court noted that the "re-entry onto the property . . . to remove the debris . . . constitutes a warrantless, non-consensual seizure that was not a continuation of the same initial seizure." Aug. 7, 2012 Op. & Order 20, ECF No. 30. Thus, the later trespass onto

Plaintiffs' property and seizure of their debris constituted a distinct entry into Plaintiffs' land and a Fourth Amendment violation unless exigent or emergency circumstances existed.

Defendants assert that emergency circumstances did exist on July 20, 2009 which authorized the entry and seizure. Defendants emphasize that there was an uncapped sewer beneath the demolished home, an open cavity anyone could fall into, and a pile of dangerous debris that could attract children or local thieves. Defendants argue that Plaintiffs did not provide any evidence to refute this testimony, failed to show that an emergency did not exist, and that "a reasonable trier of fact could have only drawn the conclusion that emergency circumstances existed on the date in question." Defs.' Mot. 6.

But Defendants' argument ignores the fact that from July 18, 2009 (when the house was demolished) until July 20, 2009 (when the debris was seized and carried away) neither Defendant City of Saginaw nor its contractors took any action to address the emergency conditions that they suggest existed. They did not contact the Plaintiffs to request that they address the risk. No fences were erected, no guards were stationed. The evidence at trial indicated that the demolished home remained on an open lot, unprotected, from Saturday afternoon until the following Monday. This is sufficient evidence for a reasonable jury to conclude that emergency circumstances did not exist on July 20, and that there was no necessity to enter the property and remove debris without notice to Plaintiffs or a court order permitting such conduct. The jury's determination that no emergency circumstances existed on July 20, 2009 will be upheld.

**B**

Defendants' second argument is that assuming emergency circumstances did not exist on July 20, 2009, no reasonable jury could have concluded that the individual Defendants were not entitled to qualified immunity. Defendants are correct.

Qualified immunity involves a two-step inquiry. First, the Court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the Plaintiffs show that a constitutional violation has occurred. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Second, the Court must consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id*.

The jury concluded that both the City and the individual Defendants — Crofoot, Barton, and Stemple — violated Plaintiffs' rights because no emergency situation remained when the debris was hauled away two days after the house was demolished. The jury also concluded that the individual Defendants were objectively unreasonable in concluding that an emergency did exist at that time. *See* Jury Verdict Form, ECF No. 62.

Defendants contend, however, that the individual Defendants are entitled to qualified immunity because they did not "make an objectively unreasonable decision to re-enter the property to haul away Plaintiffs' debris on a date subsequent to the demolition, or to authorize the same." Defs.' Mot. 7. According to Defendants, these "individual Defendants were not even aware that such a decision had been made." *Id*. at 8. Each of the individual Defendants testified that they did not know that Rohde Brothers, the City's agent, re-entered Plaintiffs' property on July 20, 2009 to remove the demolished debris at that time instead of as one "seamless occurrence" on July 18, 2009.

In fact, both Mr. Stemple and Mr. Crofoot testified that it is part of Rohde Brother's contract to remove debris and grade the property after conducting a demolition. For this reason, all three individual Defendants left the premises once Rohde Brothers had arrived and the demolition had begun. Mr. Stemple testified as follows:

> Q: When a demolition is authorized, is that particular matter handed over to Rohde Brothers?
> A: Yes.
>
> Q: Is it expected that they will complete the demolition start to finish, finish meaning final grade?
> A: That is correct.
>
> Q: Do you have any knowledge of anyone from the City of Saginaw hauling away debris from the plaintiff's property on July 20th?
> A: No.
>
> * * * * *
>
> Q: Who hauled away debris?
> A: Rohde Brothers Excavating.

Nov. 7, 2012 Trial Tr. 55. Mr. Crofoot also testified concerning the demolition process:

> Q: Were you there through the whole time?
> A: I was there until the demolition began.
>
> Q: Okay. Who did the demolition?
> A: Rohde Brothers.
>
> Q: Any need for you to stay on the property once the demolition begins?
> A: No.
>
> Q: What's your expectation of Rohde Brothers once the demolition begins?
> A: They are contracted through the city to completely demolish, remove all debris and final grade the property for each demolition they are assigned.
>
> * * * * *
>
> Q: Okay. Were you comfortable that Rohde could complete the demolition at that point in time?
> A: Absolutely.

> Q: Was there any further purpose that you needed to be present at the property?
> A: Not that day, no.
>
> Q: Okay. Did Rohde ever call you on July 18, 2009, and tell you that they could not haul away the debris?
> A: I don't believe so.
>
> Q: Did you have any involvement with the removal of the debris?
> A: No.
>
> Q: Do you know who did?
> A: Rode. [sic]
>
> Q: Did you order Rohde to go and remove the debris?
> A: Didn't have to. It was part of their contract they are required to when they demo a house.
>
> Q: That's part of the start to finish.
> A: Absolutely.

*Id.* at 79, 82–83. Mr. Barton, the fire marshal for the City of Saginaw at the time of the incident, testified that like Mr. Crofoot, he was on scene only until the demolition began.

Qualified immunity extends to government officials' objectively reasonable mistakes, "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In this case, it was objectively reasonable for the three individual Defendants to believe that an emergency existed requiring the demolition of Plaintiffs' house, as established by the jury's verdict on the issue. It was also objectively reasonable for those three individuals to believe, even if they were ultimately mistaken, that Rohde Brothers would conduct the demolition without entering the property on subsequent days. Because the individual Defendants took no action to reenter Plaintiffs' property on July 20, 2009 — neither entering the property themselves nor authorizing

Rohde Brothers to do so — the three individual Defendants are entitled to qualified immunity on Plaintiffs' Fourth Amendment claim. It was no action of theirs that violated Plaintiffs' rights.

Plaintiffs respond that Rohde Brothers was "the Defendants' agent," Pl.'s Resp. 14, ECF No. 67, and that the individual Defendants are therefore responsible for Rohde Brothers' actions in reentering the property. According to Plaintiffs, even if the individual Defendants "did not have any actual knowledge that the remnants could not be carted away until the following Monday . . . a principal is charged with constructive notice and knowledge of material facts that the agent obtains within the scope of the agency." *Id*. at 15. But Rohde Brothers was not a contractual agent of the individual Defendants; only of Defendant City of Saginaw. *See* Defs.' Mot. 4 (indicating that Rohde Brothers was Defendant City's agent). The individual Defendants are not charged with Rohde Brothers' knowledge. All three testified that they left the scene when demolition began, and expected demolition to be completed by Rohde without further involvement.

> Plaintiffs contests this point as well,
>
> It strains credibility that the Defendants did not have any knowledge that the remnants could not be carted away until the following Monday. . . . The Defendants knew or should have known that a probability existed that Rohde would not be able to remove the remnants during the weekend. . . . It is likely that this was not the first time that the City could not demolish and remove a house in a single day. It is likely that this was not the first demolition that took place when the landfill was closed. It was unreasonable to expect that the demolition would be one seamless process, especially one begun late on a Saturday afternoon.

Pls.' Resp. 15–16. These are not unreasonable suggestions, but no evidence was elicited at trial to substantiate them. "The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992) (citing *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). Plaintiff offers nothing but their apparent disbelief of the individual Defendants testimony that

they did not know that Rohde would not finish the demolition process on July 18, 2009. Because Plaintiffs have not satisfied their burden, judgment as a matter of law will be directed on behalf of all three individual Defendants.

It should be emphasized that this determination will not relieve Defendant City of Saginaw of responsibility for the Fourth Amendment violation that did occur on July 20, 2009. However, it was the City's agent, and not the individual Defendants, that caused the violation to occur. The $5,000 awarded to Plaintiffs will be upheld, but the City of Saginaw will be solely responsible for the judgment.

## IV

Accordingly, it is **ORDERED** that Defendants' motion for judgment as a matter of law, ECF No. 65, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that judgment as a matter of law be entered on behalf of all three individual Defendants — John Stemple, Gregory Barton, and Scott Crofoot — regarding Plaintiff's Fourth Amendment claim.

It is further **ORDERED** that Defendant City of Saginaw remains solely responsible for the $5,000 awarded to Plaintiffs due to the City's violation of Plaintiffs' Fourth Amendment rights.

Dated: January 31, 2013                           s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 31, 2013.
                    s/Tracy A. Jacobs
                    TRACY A. JACOBS