UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN HESCOTT, et al.,

                Plaintiffs,

v.

CITY OF SAGINAW, et al.,

                Defendants.

Case No. 10-13713
Honorable Thomas L. Ludington

_____/

**OPINION AND ORDER GRANTING IN PART, DENYING IN PART PLAINTIFFS'
MOTION FOR FEES AND COSTS AND GRANTING IN PART, DENYING IN PART
DEFENDANTS' MOTION FOR FEES AND COSTS**

The parties decided to invest four days in a trial to address Plaintiffs John and Benjamin Hescott's contention that their residential property was wrongly demolished and that the debris was wrongly carried away to a landfill. The jury concluded that the demolition was lawful — as the house constituted a public safety risk — but that no emergency required the removal of the debris without first notifying Plaintiffs or acquiring a court order. Plaintiffs were awarded $5,000 as a result.[1] Both parties have moved for costs and attorney's fees.

Plaintiffs' motion will be granted in part and denied in part, and Defendants' motion will be granted in part and denied in part.

**I**

In 2001 Plaintiffs purchased a house in Saginaw, Michigan. The house was in poor condition, and neither Plaintiff lived there for long. For a while John was able to rent the house to tenants, but that did not last. His attempt to sell the house in 2008 also proved unsuccessful.

---

[1] In Plaintiffs' motion, they represent they received $6,000. Pls.' Mot. 4, 8. Plaintiffs are mistaken. *See* Jan. 31, 2013 Judgment, ECF No. 70.

Throughout this time, John was required to make frequent repairs in order to satisfy local building authorities.

On July 18, 2009, a police officer was called to the area and he noticed that a large part of the house's foundation had given way.  Specifically, approximately half of the west basement wall had collapsed, creating an open entry into the building and undermining (literally) the foundation of the structure.  The officer contacted Defendant City of Saginaw's "code enforcement" unit and reported the situation, noting that there were children playing in and around the house and that the structure appeared unsafe.

Plaintiffs' house was then inspected by Defendant Scott Crofoot, the City of Saginaw's Dangerous Buildings Inspector.  Crofoot observed that the west wall had collapsed into the basement and that the house appeared to have rotated.  After assessing the situation, Crofoot contacted the City's Fire Marshal, Greg Barton.  Together, the two men determined that the house was dangerous due to its dilapidated condition, and because it appeared abandoned, concluded it should be demolished.  Under the City's Dangerous Buildings Ordinance, the Fire Marshal can authorize an emergency demolition.[2]  *See* Defs.' Mot. Summ. J. Ex. E, at § 151.120.

---

[2] The applicable ordinance provides in full:

> In cases where there is evidence of an immediate and serious danger to the public safety or health unless a dangerous building or structure as defined in this subchapter is immediately demolished or otherwise made safe, the Chief Inspector shall report such facts to the City Manager who may cause the immediate repair or demolition of such dangerous building or structure.  Determination of immediate and serious danger to the public safety or health shall be determined by the Chief Inspector and/or others such as the City Fire Marshal.  Further, under the provisions of section 2.201 (b) of the *Uniform Fire Code*, as adopted and amended by the City, the Fire Marshal may declare a building unsafe and order its repair, rehabilitation, or demolition.  Under the provisions of this subchapter, the Fire Marshal may order or direct the Chief Inspector to proceed under the emergency provisions of this section or may do so himself or herself.  Situations which may lead to the immediate potential for injury, death, spread of disease or infection, or for property or structural damage shall indicate an immediate and serious danger to the public safety or health.  The potential for harm to emergency personnel who may have to re-enter such structures in the course of their duties may also be used to determine immediate and serious danger to public safety or health.  The costs of such emergency repair or demolition shall be collected in the manner as provided for in § 33.26.

Defs.' Mot. Summ. J. Ex. E, at § 151.120.

The house was then demolished that afternoon by Defendant Rohde Brothers Excavating, Inc. Rohde Brothers reentered the property and removed the demolished debris to a landfill two days later.[3]

Plaintiffs filed this action against Defendants on August 19, 2010, alleging federal and state law claims arising from the demolition of the residence. Plaintiffs' complaint consumed 18 pages and identified seven causes of action: (1) procedural due process violation; (2) substantive due process violation; (3) Fourth Amendment violation; (4) violation of Article 10 of the Michigan Constitution (inverse condemnation); (5) unlawful destruction or conversion of goods; (6) trespass on land; and (7) exemplary damages under state law. *See* Pls.' Compl. ¶¶ 42–106. Plaintiffs believed they were entitled to recover the fair market value of the home which their appraiser, Mr. Mornam G. Thomas, estimated to be around $35,000. Defendants' appraiser concluded that the fair market value was substantially less.

On December 29, 2011, Defendants moved for summary judgment on all but Plaintiff's inverse condemnation claim. The Court granted the motion in part, dismissing Counts I, II, V, VI, and VII with prejudice, and Count III in part (leaving Plaintiffs' Fourth Amendment claim concerning the carrying away of the debris on July 20, 2009). *See* Aug. 7, 2012 Op. & Order, ECF No. 30.[4]

On October 15, 2012, Defendants served Plaintiffs with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68, offering to settle the case for $15,000. Defs.' Mot. Ex. 2.

---

[3] The demolition occurred on a Saturday and the local landfill was not open until Monday morning.

[4] The Court later vacated portions of the order. This was done because Plaintiffs did not respond to Defendants' arguments regarding the state law claims, and the Court suggested supplemental briefing was necessary to properly address the issues. However, in an unfortunate oversight, the Court nevertheless dismissed Plaintiffs' state law claims. Accordingly, the portion of the order dismissing the state law claims was vacated, supplemental briefing was requested, and the Court then addressed the issues involved. After further consideration, the Court dismissed all of the contested state law causes of action (each with the exception of Count IV, Plaintiffs' inverse condemnation claim). Thus, all that remained for trial was Plaintiffs' state law inverse condemnation claim and their Fourth Amendment claim regarding the removal of the debris after demolition.

Plaintiffs rejected the offer, and although their own appraiser valued the house at no more than $35,000, they demanded $324,750 to settle the case. Defs.' Mot. Ex. 1, at 2. As one might expect, the chasm between the parties could not be closed and the case proceeded to trial. Defs.' Mot. Ex. 3.

Over four days the jury considered the two triable claims: Plaintiffs' claim against Defendant City of Saginaw for inverse condemnation; and Plaintiffs' claim against the City and individual Defendants John Stemple, Scott Crofoot, and Gregory Barton for the carrying away of any fixtures, personal property, and effects after the house was demolished. The jury reached a unanimous verdict of no cause of action on Plaintiffs' claim for inverse condemnation, concluding that there were emergency circumstances that justified the immediate demolition of the residence. The jury found, however, that no emergency existed to justify reentry of Plaintiffs' property to seize the debris two days later without, presumably, notice to Plaintiffs or obtaining a court order permitting the reentry. The jury awarded Plaintiffs $5,000 for the market value of the debris that was carried away.

At the close of Plaintiffs' case, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Court requested that Defendants briefly outline their motion and took the motion under advisement because of time constraints. The case was then submitted to the jury. After the jury awarded damages on Plaintiffs' Fourth Amendment claim, Defendants renewed their motion pursuant to Federal Rule of Civil Procedure 50(b).

The Court agreed with Defendants in part, and overturned the jury's verdict as it related to the individual defendants. Because "the individual Defendants took no action to reenter Plaintiffs' property on July 20, 2009," and indeed, did not authorize Rohde Brothers to do so,

- 4 -

they were entitled to qualified immunity on Plaintiffs' Fourth Amendment claim. This determination did not relate to Defendant City of Saginaw, and accordingly, did not upset the jury award of $5,000.

Twenty-eight days after judgment was entered, both parties moved for costs and attorney's fees.

## II

Plaintiffs move for costs, including attorney's fees, pursuant to Federal Rule of Civil Procedure 54(d)(2) and 42 U.S.C. § 1988(b). Defendants' motion likewise comes under Rule 54(d)(2), and also Federal Rule of Civil Procedure 68(d).[5] Each motion will be addressed in turn.

## A

Plaintiffs' motion for costs and attorney's fees is grounded in § 1988 and Rule 54. Rule 54 provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). And while Rule 54 does not establish authority for awarding attorney's fees,[6] § 1988(b) "permits the court, in its discretion, to allow the 'prevailing party' in a federal civil rights action 'a reasonable attorney's fee as part of the costs.'" *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013) (quoting § 1988(b)). Congress enacted § 1988 as an exception to the general American rule that parties are required to pay their own attorney's fees

---

[5] Although Federal Rule of Civil Procedure 54(d) requires a motion for attorney's fees to be filed "no later than 14 days after the entry of judgment," Fed. R. Civ. P. 54(d)(2)(B)(i), Local Rule 54 provides that "[a] motion for attorneys' fees and related non-taxable expenses pursuant to Fed. R. Civ. P. 54(d)(2) must be filed no later than 28 days after entry of judgment." E.D. Mich. LR 54.1.2. Thus, although judgment was entered on January 31, 2013 and both parties' motions were filed on February 28, 2013, they are timely under the Local Rule.

[6] The Sixth Circuit has indicated that Rule 54 "does not provide independent authority for courts to award attorneys' fees." *Gibson v. Solideal USA, Inc.*, 489 F. App'x 24, 34 n.4 (6th Cir. 2012) (quoting *Evans v. Metro. Life Ins. Co.*, 190 F. App'x 429, 437 n.8 (6th Cir. 2006)). Instead, Rule 54 "sets forth only the mechanism and timing" for seeking such an award. *Gibson*, 489 F. App'x at 34 n.4 (quoting *Evans*, 190 F. App'x at 437 n.8).

"in order to ensure that federal rights are adequately enforced." *Gordon*, 710 F.3d at 620 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). In their motion, Plaintiffs request $130,180 in attorney and paralegal fees, $1,705 in expert fees, and $300.34 in costs.[7] *See* Pls.' Mot. 19.

**1**

In order to qualify for costs under Rule 54 or attorney's fees under § 1988, a plaintiff must be a "prevailing party." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835 (6th Cir. 2005). "Prevailing party" is a legal term of art which, over time, has been distilled to "succeeding on any significant issue which achieves some of the benefit the parties sought in bringing suit." *Gordon*, 710 F.3d at 620 (brackets and ellipsis omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). As the Sixth Circuit has established, a party "crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *Gordon*, 710 F.3d at 620 (quoting *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010)).

Plaintiffs' are "prevailing parties" in this case, as they were awarded $5,000 on their Fourth Amendment claim. Indeed, Defendants concede the point: "Defendant does not dispute that Plaintiff is technically a 'prevailing party.'" Defs.' Resp. 8, ECF No. 77. Accordingly, Plaintiffs will be awarded their costs pursuant to Rule 54.

The costs that courts may tax under Rule 54, however, are "confined to the costs itemized in 28 U.S.C. § 1920." *Gibson v. Solideal USA, Inc.*, 489 F. App'x 24, 33 (6th Cir. 2012)

---

[7] Plaintiffs have already received $260.34 in costs taxed against Defendant City of Saginaw. *See* Costs Taxed 1, ECF No. 72. That sum was made up of $80 for service of summons and subpoena and $180.34 for witness fees. *Id.* Plaintiffs' request for $40 for docket fees was denied by the Clerk. Taken together, these sums comprise the $300.43 Plaintiffs now request in costs.

(quoting *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007)). § 1920 enumerates six categories of costs a court may tax, including:

   (1) Fees of the clerk and marshal;

   (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

   (3) Fees and disbursements for printing and witnesses;

   (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

   (5) Docket fees under section 1923 of this title;

   (6) Compensation of court appointed experts . . . .

28 U.S.C. § 1920.  As indicated, Plaintiffs incurred $300.34 in costs and $1,705 in expert fees. But the expert was not court appointed, and therefore, his fees are not recoverable under Rule 54. *See Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1393 n.9 (D. Or. 1996) ("Because [the court] did not appoint the experts under Rule 706, their fees are not 'costs' that may be awarded to the prevailing party under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920(6).").

   Plaintiffs also will not receive $260.34 of the $300.34 they request in costs.  The figure Plaintiffs request is made up of $80 in service fees, $180.34 in witness fees, and $40 in docket fees.  But Plaintiffs already received $80 for service fees and $180.34 for witness fees after they filed a Bill of Costs on February 28, 2013.  Plaintiffs offer no authority to justify taxing Defendants twice.  Accordingly, Plaintiffs will only receive the $40 in docket fee costs that remain outstanding.[8]

---

[8] These fees will be taxed only because they occurred before Defendants' offer of judgment, which otherwise would prevent their recovery, as will be discussed at length.

**2**

Section 1988 provides that a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  A "prevailing party," however, is not automatically entitled to attorney's fees.  Indeed, § 1988 explicitly leaves the decision whether to award such fees to the discretion of the courts.  Based on the facts of this case, its procedural history, and the Court's observation of the parties and their attorneys, attorney's fees are not warranted under § 1988(b).

A prevailing plaintiff in a § 1983 action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley*, 461 U.S. at 429 (internal quotation marks omitted).  The amount of the fee "must be determined on the facts of each case."  *Id*.  The Supreme Court has emphasized twelve factors for making the determination.[9]  *Id*.

In cases where a plaintiff "succeeded on only some of his claims for relief" (as here) the consideration of "results obtained" is "particularly crucial."  *Id*. at 434.  Where it is difficult to distinguish the claims a plaintiff succeeded on from those that met with failure — which Plaintiffs maintain encapsulates this situation — "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id*. at 435.  Where a plaintiff "has achieved only partial or limited success," the product of hours expended multiplied by a reasonable hourly rate "may be an excessive amount."  *Id*. at 436.  Accordingly, that Plaintiffs are "prevailing parties" "may say

---

[9] As originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), these factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 717–19.

little about whether the expenditure of counsel's time was reasonable in relation to the successes achieved." *Id*.

Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436). In *Farrar*, the Supreme Court countenanced a plaintiff that had "prevailed" under § 1983, and who brought a motion for attorney's fees and costs pursuant to § 1988(b). The Court noted, however, that "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." *Farrar*, 506 U.S. at 115. The Court continued, "fee awards under § 1988 were never intended to produce windfalls to attorneys." *Id*. (internal quotation marks omitted) (quoting *Riverside v. Rivera*, 477 U.S. 561, 580 (1986)). In assessing fees, courts are to consider "the relationship between the extent of success and the amount of the fee award." *Farrar*, 506 U.S. at 115–16 (quoting *Hensley*, 461 U.S. at 438).

Plaintiffs' counsel seeks recovery for approximately 365 hours of work, along with 23 hours expended by their paralegal. Counsel believes they are entitled to an hourly fee of $350, and maintain they customarily charge "$100 an hour for paralegal services." Pls.' Mot. 8–9. But what was the result of all of this work (for which they claim entitlement to $130,000)? A recovery of $5,000.

Plaintiffs sought approximately $325,000 to resolve the case as of October 15, 2012 (less than one month before trial). [10] In closing argument, Plaintiffs' counsel asked the jury to award $292,000 in damages. Trial. Tr. 22, *attached as* Defs.' Resp. Ex. 2. Plaintiffs received $5,000. Plaintiffs' modest jury award, the "results obtained" here, weighs heavily against any award. *See Farrar*, 506 U.S. at 115 ("Having considered the amount and nature of damages awarded, the

---

[10] Plaintiffs' pretrial demand amounts to roughly 65 times what the jury would ultimately award.

court may lawfully award low fees or no fees"); *Walker v. City of Chicago*, No. 11-3771, 2013 WL 1098397, at *3 (7th Cir. Mar. 13, 2013) ("To put it bluntly, Walker 'asked for a bundle and got a pittance,' and the district court was well within its discretion to conclude that the disparity between the amount sought and the amount received weighed against awarding attorney fees.") (citation omitted).

In *Farrar* the Supreme Court established two other factors to consider in awarding attorney's fees to a prevailing party: (1) "the 'legal significance' of the issue being litigated," and (2) "the public purpose (if any) of the litigation." *Walker*, No. 11-3771, 2013 WL 1098397, at *3 (quoting *Farrar*, 506 U.S. at 121–22 (O'Connor, J., concurring)). These factors, taken together, recommend against awarding Plaintiffs' attorney's fees. Although a Fourth Amendment violation is surely significant, in context, the violation here was of little effect. Defendants demolished Plaintiffs' house because it was a dangerous nuisance. The only reason the debris could not be hauled away that day — which would have obviated any need to reenter the property — was the fact that the landfill was closed over the weekend. It was not Defendants' policy to reenter properties to haul debris away. And because of this reason, the litigation carried little public purpose. The City will still be forced to demolish dangerous properties in emergency circumstances to protect its citizens, even if those demolitions must take place over the weekend. It will simply have to find a location to store debris until the landfill opens.

Having considered the nature and amount of Plaintiffs' award, the importance of the claim and its public purpose, and the reasonableness of bringing the case as far as it went, the Court concludes no award of attorney's fees is warranted.[11]

---

[11] Even if attorney's fees were proper here, the Supreme Court's decision in *Marek v. Chesny*, 473 U.S. 1, 10 (1985) would vastly limit the possible recovery: "Civil rights plaintiffs—along with other plaintiffs—who reject

**B**

Defendants rely not on Rule 54 or § 1988, but on Federal Rule of Civil Procedure 68(d). This is undoubtedly due to the fact that approximately one month before trial, Defendants made an Offer of Judgment in the amount of $15,000.  Rule 68 establishes that "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."  Fed. R. Civ. P. 68(d).  The Sixth Circuit has made clear that where a claimant does not accept a Rule 68 offer, "even if the claimant eventually prevails in the litigation, he will be forced to pay his own *and the defending party's post-offer costs* if his victory is not more favorable than the offer."  *Pouillon v. Little*, 326 F.3d 713, 718 (6th Cir. 2003).   "Rule 68's language is mandatory and leaves a district court without any discretion."  *Id*. (quoting *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 295 (6th Cir. 1989)).

Plaintiffs here will not be awarded a judgment that exceeds $15,000; but that of $5,300.34 (of which $260.34 has already been taxed).  Accordingly, Plaintiffs' final judgment is not "more favorable than the unaccepted offer," and they "must pay the costs incurred after the offer was made."  *Id*.  Established by *Pouillon*, this includes Defendants' costs.  326 F.3d at 718 (requiring prevailing Plaintiff to "pay all costs incurred by both sides after the date of the offer").

---

an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected."  Accordingly, Plaintiffs could not recover on at least 209 hours out of the 365 they seek.

Additionally, only the work counsel did on the claim Plaintiffs "prevailed" on is recoverable.  *See Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011) ("The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief").  But counsel's representation of how they directed their work is not convincing. For example, they contend they spent only 66.05 hours out of a total 441.85 on the inverse condemnation claim, on which Defendants prevailed at trial.

The question then becomes: Are Defendants' post-offer attorney's fees included in this amount? The Court concludes that they are.

Rule 68 "plainly speaks of the consequences of acceptance or rejection of an offer on the award of costs, but it is totally silent on the subject of attorney's fees." *McCain v. Detroit II Auto Fin. Ctr.*, 378 F.3d 561, 563 (6th Cir. 2004). In *McCain*, the court continued, "[h]ence the only way in which Rule 68 directly implicates awards of attorney's fees is in situations where such fees are made an element of 'costs' — whether by statute (42 U.S.C. § 1988 is the most familiar example) or as a matter of contract." *Id*. Thus, the Sixth Circuit has specifically indicated that a Rule 68 offer in a § 1983 case such as this one (where attorney's fees are made a part of costs through § 1988) contemplates the award of attorney's fees.

Plaintiffs argue that the Court has "no authority under Rule 68 to award the City its attorney fees under §1988(b) because the City lost the Plaintiffs' 4th Amendment claim." Pls.' Resp. 4, ECF No. 78. This argument, however, was specifically foreclosed by the Sixth Circuit in *Pouillon*. There, the plaintiff brought an action pursuant to § 1983. The defendant made an offer of judgment before trial, which the plaintiff rejected. At trial, plaintiff was the "prevailing party," but his award was far less than the defendant's offer of judgment. The Sixth Circuit removed all doubt from the issue, on facts essentially identical to those here, by declaring that "even if the claimant eventually prevails in the litigation, he will be forced to pay his own and the defending party's post-offer costs if his victory is not more favorable than the offer." *Pouillon*, 326 F.3d at 718.

Plaintiffs also argue that "[t]he City also is not entitled to costs under Rule 68 related to the inverse condemnation claim because prevailing defendants are not entitled to costs under Rule 68." Pls.' Resp. 11. But costs based on Rule 68 are not apportioned between successful

and unsuccessful claims, as are fees under § 1988, and the fact that Defendants prevailed on the inverse condemnation claim is of no effect. [12] Plaintiffs are *required* to pay Defendants' costs, including attorney's fees, accrued after the offer was rejected, regardless of the fact that Plaintiffs did not prevail on every claim. It would make little sense to shift costs to plaintiffs that do not overcome pretrial offers of judgment when they succeed at trial on all of their claims, but not when they succeed on only some. Plaintiffs here prevailed, and were awarded a judgment. That judgment was less, however, than Defendants' pretrial offer. So Plaintiffs are responsible for Defendants' post-offer costs (which include reasonable attorney's fees).[13]

And upon review, the Court concludes that the sum Defendants request — $24,712.50 in attorney's fees — is reasonable for the period since their offer of judgment on October 15, 2012.

Attached to Defendants' motion for fees are billing sheets that indicate two attorneys, Gregory Mair and Brett Meyer, devoted 197.7 hours to this case since October 15, 2012. There can be little argument from Plaintiffs that this number is reasonable, as they spent 172.95 hours solely preparing for and conducting the November trial.[14] Pls.' Mot. 17. Further, Defendants' request for an hourly rate of $125 is very generous. As indicated by the *2010 Economics of Law Practice Attorney Income and Billing Rate Summary Report*, which Plaintiffs provided with their

---

[12] Plaintiffs' reliance on *Delta Air Lines, Inc. v. August*, 450 U.S. 346 (1981) offers no respite. In that case, the Supreme Court held Rule 68 did not apply "because it was the defendant," and not the plaintiff, "that obtained the judgment." *Id.* at 352. In this case, Plaintiffs did obtain a judgment — for $5,300.34 — which is substantially less than the $15,000 Defendants offered pretrial. Plaintiffs' reliance on *Danese v. City of Roseville*, 757 F. Supp. 827, 831 (E.D. Mich. 1991) is without merit for the same reason.

[13] Plaintiffs' other argument, that costs cannot be awarded here because Defendants "made no attempt to apportion those costs" between themselves is without merit. Defendants made the pretrial offer collectively, proceeded to trial after their collective offer was rejected, and now can recoup their collective costs. How they wish to apportion those costs is not a matter for this Court's consideration, and Plaintiffs offer no authority suggesting otherwise.

[14] Defendants' number of hours is understandably greater because it includes "post-verdict procedure, including drafting Defendants' Motion for Judgment as a Matter of Law and Reply to Plaintiffs' Response to same." Defs.' Mot. 10.

motion, the only attorneys that charge an hourly rate of less than $125 are the bottom quarter of attorneys who are "Unemployed, looking for work," Pls.' Mot. Ex. C, at 7, and the bottom quarter of attorneys representing public defendants in criminal cases, *id*. at 10. According to that Summary Report, the average billing rate for attorneys working in the civil rights field is $255 per hour. It follows that Defendants' request for attorney's fees in the amount of $24,712.50 (197.7 hours x $125) is reasonable.

Defendants also request $2,631.46 in costs for the period after October 15, 2012. However, this sum includes an expert fee in the amount of $1,879.50. Discussed previously, expert fees for those who are not appointed pursuant to Federal Rule of Evidence 706 are not recoupable under Rule 54. Further, only expert fees involved in a "proceeding to enforce a provision of section 1981 or 1981a" may be included as a part of attorney's fees under § 1988. *See* § 1988(c); *Adams v. Garrett*, No. 06-0788, 2010 WL 4904474, at *3 n.3 (M.D. Tenn. Nov. 23, 2010). So while Plaintiffs will pay Defendants' accumulated costs from October 15, 2012 onward — a sum which will include $24,712.50 in attorney's fees — Plaintiffs will not be required to pay for Defendants' expert. The costs owed (without attorney's fees) are therefore $751.96.[15]

As the Supreme Court indicated in *Marek v. Chesny*, 473 U.S. 1, (1985), "[t]he plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Id*. at 5. "To be sure, application of Rule 68 will require plaintiffs to 'think very hard' about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates." *Id*. at 11. Because Plaintiffs rejected Defendants' offer with a clear understanding of the associated risks, they will be ordered to pay Defendants' accumulated expenses after the offer was made in good faith and rejected.

---

[15] Cost request of $2,631.46 minus $1,879.50 in expert fees.

**IV**

Accordingly, it is **ORDERED** that Plaintiffs' motion for attorney's fees and costs, ECF No. 74, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Defendants are **DIRECTED** to pay Plaintiffs $40 in costs.

It is further **ORDERED** that Defendants' motion for attorney's fees and costs, ECF No. 73, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Plaintiffs are **DIRECTED** to pay Defendants $751.96 in costs and $24,712.50 in attorney's fees (for a total sum of $25,464.46).


Dated: May 31, 2013                     s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge


---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 31, 2013.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS

---